No. 3689

Second Circuit

(Second Division)

———

FLOURNOY v. ROBINSON-SLAGLE LBR. CO., INC.

———

(July 16, 1931. Opinion and Decree.)

———

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellant.

CULPEPPER, J. Plaintiff sued to have an alleged pretended materialman's lien against her property canceled from the records, and, in connection with the suit, asked for damages in the sum of $500 by reason of injuries she alleges she suffered on account of illegal demands made upon her by defendant to pay for material, and repeated threats to sue plaintiff if same was not paid, notwithstanding repeated protests that she did not owe the debt; all of which acts of defendant are alleged to have been wrongful, malicious, and done with intent to injure plaintiff, and did cause her great worry, anxiety and exasperation. In addition to the claim for $500, plaintiff asks for $150 as attorney's fee incurred to obtain cancelation of the lien from the mortgage records. From a judgment in favor of plaintiff, awarding her damages in the sum of $150, defendant has appealed. Plaintiff has not answered the appeal but urges in brief and in argument that the amount of judgment should be increased to $250.

Mrs. Lou S. Flournoy, plaintiff, owned and resided in the dwelling at No. 836 Dalzell street, in the city of Shreveport. She was a widow at time of occurrence of the incident giving rise to this lawsuit. This property constituted her home, and that of her aged mother who resided with her. Plaintiff's only means of support was from roomers taken in her home, except that she owned a small amount of building and loan stock from which she derived sufficient revenue with which to pay taxes and insurance.

Some time in 1927 plaintiff contracted, in writing, with one F. H. Tolle, a local contractor recommended to her by some of her neighbors, to do some repair work upon her residence at a cost of about $1,200. The contractor obligated himself to furnish all materials and labor. The work was completed early in August, 1927, and plaintiff made final settlement with the contractor on the 6th.

The defendant had sold plaintiff's contractor lumber and materials to use in making these improvements aggregating in value, $417.30. Not being able to collect from the contractor, defendant, on December 23, 1927, sent its salesmanager, Mr. L. C. Allen, to locate the building and its owner for the purpose of collecting from the owner this account. Upon locating the building and learning the name of the owner, Mr. Allen returned and called plaintiff over the telephone and made demand on her to pay the bill. Upon plaintiff's refusal to pay, Mr. Allen, representing defendant, executed a formal lien, attached sworn itemized statement of the account and caused it to be filed and recorded on the 28th day of December, 1927. On the same day he addressed to plain-

tiff by registered and special delivery mail the following letter, which was delivered to her in her home:

"Mrs. Lou S. Flournoy,
 836 Dalzell,
 , City.
"Dear Madam:—
 "We are enclosing herewith sworn itemized statement for the sum of $417.30, which represents material sold to F. L. Tolle, contractor, and used by him in repairing and reconstructing of a dwelling owned by you on Lot 5 and E. 10' of Lot 4, Block 1 of the Thornhill subdivision, City of Shreveport, La.
 "Also certified copy of a lien filed against your property on December 28th, 1927.
 "This is to advise that we are looking to you as owner, for payment of this material bill and trust that you will make arrangements to take care of same, thereby saving yourself the expense and embarrassment of a suit to enforce collection.
 "Yours very truly,
 "Robinson Slagle Lumber Company,
 "L. C. Allen, Sales Manager."

Plaintiff alleges in her petition that Mr. Allen called her twice over the telephone, the first time on or about the 23rd of December and then again called her a few days later. In her testimony, however, she admits she called only once, or if twice, she does not remember but the one conversation with Mr. Allen. Mr. Allen says he called Mrs. Flournoy only one time. The only other communication had with Mrs. Flournoy was the letter addressed to her, written by Mr. Allen, on December 28th, to which were attached the itemized statement of bill of materials and copy of the recorded lien.

Plaintiff alleged in petition that when Allen called her he told her Robinson-Slagle Lumber Co. had furnished material to the contractor for her house to the extent of $417.30, which had not been paid and that she was liable for same, and de-

manded immediate payment, and threatened to record a lien against her property if she did not pay; that Allen tried to intimidate plaintiff into paying the bill; that she protested against paying the bill because under her contract the contractor was to pay for all the materials; that she had nothing whatever to do with paying for the materials. She alleges she protested against any lien being filed against her property.

It is further alleged:

"That in making said repeated demands of petitioner and in filing and recording said lien, the defendant knew that petitioner was in no wise responsible for the debt claimed against said contractor and that the filing of said pretended lien was wrongful and malicious and done with the intention of injuring petitioner; that at the time the demand was made upon petitioner by the defendant, petitioner's mother was quite ill, demanding all of petitioner's time and attention; that on account of the Christmas season petitioner was unable to get in communication with her attorney, and for several days she was greatly worried and exasperated by the injury and wrongful demands and threats of defendant; and that she has been damaged and injured in worry, anxiety, and exasperation by the wrongful demands of plaintiff and the wrongful registry of said pretended lien in the sum of Five Hundred ($500.00) Dollars, and;

"That she has incurred obligation for attorney's fee to the extent of One Hundred Fifty ($150.00) Dollars to obtain cancellation of said lien * * *."

Defendant in answer made general denial, but admitted telephoning plaintiff advising her of defendant's claim for materials furnished, admitted advising plaintiff that unless same was paid it would be necessary to record a lien on her premises, admitted having the lien recorded, also admitted writing the letter alleged upon, with inclosure of statement and copy

of lien. Further answering, defendant alleged,

"* * * that it has ascertained and believes that the lien recorded by it * * * was recorded too late.

"It avers that it did have a lien and privilege upon said property for the payment of said debt for said materials as alleged, but that, solely owing to the delay in recording same, that lien has no legal effect.

"It avers that it has ordered the cancellation of said lien, and that same has been duly cancelled on the records of Caddo Parish, Louisiana.

"It avers that no demand has ever been made upon it to cancel said lien before the filing of this suit."

The lien complained of was voluntarily canceled by defendant immediately upon the filing of the suit, and before a hearing on same. The issues before the court upon the trial of the case were thus narrowed down to the question of damages claimed.

No testimony was adduced before the court as to the amount of attorney's fee. At the conclusion of the trial an agreement between counsel was entered in the record that in event the court should hold attorneys' fees are allowable the court should fix the amount. The court, however, in its judgment, made no mention of attorneys' fees. We therefore take it that none was allowed. Plaintiff's counsel filed no answer to the appeal asking for allowance of attorneys' fees, and we shall not pass upon that question, as we assume the claim has been abandoned.

Plaintiff testified substantially the same as she alleged in her petition. When asked as to the effect these demands had upon her, she said:

"Of course, I was so excited at that time; I don't know that I remember that there was a sixty-day limit to their time to notify me, but I told them I didn't think I could be held for it."

"He said I would have to pay it."

"I don't know whether they said they would bring suit or not; they said they would hold me responsible."

Asked by the court if anything was said about a lien against her property, plaintiff replied:

"I didn't know they were going to put that lien until this special delivery registered letter came."

She says Mr. Allen told her that their lawyer would attend to the matter.

Asked by counsel if her mother was sick at time this conversation was had, witness replied:

"She had the flu in September and had laid in one position for several months, and I was so troubled and anxious I couldn't remember as well as I should and when that second notification was made (meaning the letter) I was in bed with flu; was lying there on the other bed and I was so disturbed it run my fever up."

On cross-examination plaintiff testified she was confined in bed several days after the incident about the letter, and that her mother died soon after that.

Mr. Allen, in explaining why he telephoned plaintiff, testified that after being unable to locate and see Mr. Tolle, the contractor, about collecting this bill of lumber for his company, he then set out to locate plaintiff's house; that finding the house and the name of its owner, Mrs. Flournoy, he went back and phoned her; asked her if she had had some work done by Mr. Tolle and she said she had; that he then told her Mr. Tolle had not paid Robinson-Slagle Company in full for the material the company had sold him to go into her house. He said Mrs. Flournoy

was surprised and said she had paid Tolle in full, and he then told her "it looked as if we would have to file a lien on the place and regretted it very much." Asked if he had any feeling of malice against Mrs. Flournoy, Mr. Allen answered that he had none.

Witness testified he had never met plaintiff before and she had never had any dealings with defendant company. He says he was influenced by no desire other than to protect legally the interest of his employer in doing what he did.

Apparently what Mr. Allen said during his conversation with Mrs. Flournoy was about the same that he wrote her in the letter.

Plaintiff relies upon the broad provisions of the article 2315 of the Civil Code, that

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

In Graham v. Western Union Telegraph Co., 109 La. 1070, 34 So. 91, 93, being a suit for damages for mental pain and anguish occasioned the mother for failure of defendant to deliver a message to her announcing the mortal illness and approaching death of her son, the court said:

"In this state matters have not been permitted to rest on judicial opinion as to what the law would or should authorize. The lawmaker has expressly declared in article 1934 of the Civil Code that there are cases in which damages may be assessed without calculating altogether on the pecuniary loss or privation or pecuniary gain to the party. * * *

"Mental pain and suffering, as to their existence, are certainly as actual, clear, and positive as are intellectual enjoyment and gratification, and the former are as susceptible of being ascertained and gauged as are the latter * * * if a man

who has used harsh and insulting language to another, short of defamation, can be held legally to respond in money for the humiliation which he has caused the latter to suffer, no good reason can be assigned why mental pain and suffering could not and should not furnish equally the basis for a judgment for damages."

The court further said:

"There are many matters from which resulting injury may be presumed and inferred on proof of the existence of the things themselves, leaving the extent of the injury and the amount properly to be awarded to the party suffering the injury to be determined by the sound discretion of the courts."

We think plaintiff is entitled under the law to some damages. She was a lady of refinement evidently, in moderate circumstances, it is true. She was not in good health at the time and was burdened with the care of an invalid mother. The demands made upon her, and as made, were admittedly without foundation in law or in fact, and constituted an invasion of her legal rights. As a result it became necessary for her to take some steps to redress the wrong that had been admittedly done.

Liens are stricti juris. The only way defendant could have ever collected this amount was to comply strictly with the law (Civil Code, art. 3272) in order to subject plaintiff's property to a lien. There never was at any time any personal obligation on her part to pay the debt, and when, after the expiration of the time limit within which to file a lien, defendant burdened, or sought to burden, plaintiff's property with a lien, accompanied by threats to sue her, it was not only an error, but was calculated to cause, and did cause, an ill, sensitive woman, who had never had a lawsuit in her life, a great deal more worry and concern than it

would have given a man of affairs. It was aggravated by being made during the particular time that it was, the Christmas holiday season.

There may have been no malice on the part of defendant, but none, we think, was necessary when the act complained of was a trespass upon and an invasion of the rights of a wholly innocent person, under circumstances calculated to cause humiliation and worry to a woman who was called upon, as plaintiff was, without any basis of law, to give up her meager savings, which to her must have been a large sum. And, besides, to be threatened with a suit and a foreclosure upon her very home, in which she and her invalid mother lived, on account of an unjust lien, was calculated to cause her very great anxiety; and the thought to her that she would be compelled to raise the money or fight a lawsuit, under her condition and circumstances, no doubt, must have appeared to her little short of disaster.

To permit defendant to go without making any sort of restitution would, we think, be to punish the innocent for the sins of the guilty. While, if we were trying the case, as did the lower court, we might not have awarded as large a sum as the court did, we do feel that some amount should be awarded. We do not feel, however, that we should interfere with the finding of the trial judge in that respect, as such is left largely within his discretion. Evidently the trial judge, who saw and heard plaintiff testify, and who was in position to tell as to the extent of her suffering, mental worry, and anxiety, came to the conclusion that the circumstances justified and called for the award for the damages claimed and in the amount granted by him. We cannot say there is any manifest error in the judgment, and same is therefore affirmed.